**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CARY W. DRAKE

     PLAINTIFF,

        v.

WELLS FARGO BANK N.A., et al.
DEFENDANTS

Civil No. 2:16-cv-08797-MCA-LDW

**PLAINTIFF'S CONSLIDATED MEMORANDUM IN OPPOSTION OF MOTION**
**TO DISMISS OF POWERS KIRN, JEREMY DOPPELT REALTY MANAGEMENT,**
**LLC, AND WELLS FARGO BANK AND IMPROPERLY PLED MOTION TO STRIKE**
**OF POWERS KIRN BASED ON RULE 12(F)**

      All Defendants in this case, in particular Defendant Powers Kirn, are attempting to raise the theory that the case cannot proceed on its merits because of a state court action that is separate, apart and nongermane to this case. Defendant Wells Fargo Bank is attempting to claim, unsuccessfully that Rooker Feldman and the Entire Controversy Doctrine apply to this matter. Simply put, they do not. The claims in this matter would not have been germane in the Foreclosure matter, and as such, could not have been raised. Defendant Jeremy Doppelt Realty Management, LLC is claiming that none of the claims apply to them. While it is accurate to say that not all claims due, there are certainly still claims, such as Unjust Enrichment, that do in fact, still apply. Defendant Powers Kirn has taken the novel route of, instead of properly opposing the actual claims in this case, they instead attack Plaintiff's attorney, and have even gone so far as to file a frivolous "Third Party Complaint" as a collateral attack on this action. Further, in addition to the arguments

1

stated above, they include an argument that arises from anti-trust law that has no basis in fact or law in this case, and effectively shows they will go to any length to try and have this case dismissed against them, likely because they realize that they are now being held liable for their severe actions in this matter.

## I. __The Motion To Dismiss Must Be Denied__

In considering a motion to dismiss under Rule 12(b)(6), the court must first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Then, the court determines whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Id.* All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). None of the claims in the Complaint should not be dismissed. The Defendants all assert very similar arguments and as such, can be handled in a consolidated matter.

## II. __Wells Fargo Bank's Motion to Dismiss Must be Denied.__

As was recently decided in *Rodriguez v. Wells Fargo*, 18-7959. (D.N.J. 2019), "Plaintiffs' claims, to the extent they seek damages, are not barred by *Rooker-Feldman* because they address collateral issues to what was actually decided in the foreclosure matter, as the *Siljee* court also found. [Citing *Siljee v. Atlantic Stewardship Bank,* No. 15-1762, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016).] In the foreclosure action, the state court addressed whether Plaintiffs defaulted and Wells Fargo's right to foreclose. But here, Plaintiffs attack Wells Fargo's alleged failure to recognize and fix the alleged clerical error in Plaintiffs' mortgage application. Although a decision in Plaintiffs' favor puts the foreclosure on admittedly tenuous footing, this Court is not actually

asked to conclude that the state court erred in the foreclosure action. *See, e.g., Siljee,* at \*5; *see also Giles v. Phelan, Hallinan & Schmieg, L.L.P.,* 901 F. Supp. 2d 509, 521 (D.N.J. 2012) ("The Third Circuit has distinguished lawsuits based on a defendant's actions . . . from lawsuits in which the state court judgment itself is challenged."). As a result, Plaintiffs' damages claims are not barred by the *Rooker-Feldman* doctrine."

*Rooker-Feldman* "is a 'narrow doctrine' that 'applies only in limited circumstances.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Lance v. Dennis*, 546 U.S. 459, 464-66 (2006)). The doctrine, therefore, "does not bar suits that challenge actions or injuries underlying state court decisions—and especially those that predate entry of a state court decision—rather than the decisions themselves." *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017). Under the *Rooker-Feldman* doctrine, federal courts do not have the subject matter jurisdiction to review final judgments of state courts. *Puche V. Wells Fargo Na*, Civ. No. 16-05195 (DNJ June 22, 2017); *Citing Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

The *Rooker-Feldman* doctrine is implicated where, in order to grant the relief sought by a plaintiff, a federal court must determine that a state court judgment was erroneously entered, or must take action that would render that state court judgment ineffectual. *Puche V. Wells Fargo Na*, Civ. No. 16-05195 (DNJ June 22, 2017); *Citing FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir. 1996). Accordingly, in conducting a *Rooker-Feldman* inquiry, the Court asks if (1) the federal claim was already litigated in state court before the filing of the federal action, or (2) the federal claim is inextricably intertwined with the state adjudication. *Puche V. Wells Fargo Na*, Civ. No. 16-05195 (DNJ June 22, 2017); *Citing In re Madera,* 586 F.3d 228, 232 (3d Cir. 2009).

In *Puche*, in regard to the damaged claim, the court stated "Damages, if awarded, would not nullify the state court's foreclosure judgment, because it would not challenge the transfer of the real property effectuated by the foreclosure." *Puche V. Wells Fargo Na*, Civ. No. 16-05195 (DNJ June 22, 2017). As such, the court stated that "there is no question that a finding for [damages] in this Court would not render the state court's judgment ineffectual." *Id.* Violations of RESPA, or of Defendant's contractual duty of good faith and fair dealing, do not implicate the validity of the foreclosure judgment. *Id.*

Like in the *Rodriguez v. Wells Fargo* matter and as was previously stated, none of the claims in this action could have been brought in the state Foreclosure action, as they would not have been considered germane. Further, they do not seek to overturn either of the state court orders. Additionally, as the court is well aware, the "germane" defenses in a foreclosure action are very few, and the claims raise here could not have been brought in the foreclosure action. Further, like in the *Kachur v. WMC Mortgage Corporation* matter, for several of the claims Rooker-Feldman does not apply, as that court made clear. Further, the motion should have been dismissed specifically regarding count three because "a reasonable jury could find facts to support the conclusion that Moving Defendants are debt collectors under the FDCPA" *Kachur v. WMC Mortgage Corporation*, 3:18-cv-15111-AET-TJB (D.N.J. 2019). (See Exhibit A – Kachur Order).

A case from the District court can shed light on the defenses in this case, specifically the order from September 26, 2018 in *Covino v. Wells Fargo*, Civil Action No. 2:16-cv-02264. (NJD 2018). As cited in that case, the court in *Covino* ruled that "the Court finds "that *Colorado River* abstention does not apply [to Plaintiff's RESPA claims] because nothing in the pleadings or submissions suggests that [Plaintiff] seek[] to revisit the determinations made in the foreclosure action." *Covino v. Wells Fargo*, Civil Action No. 2:16-cv-02264. (NJD 2018). The *Colorado River*

4

abstention, from *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) comes into play generally where two cases, normally a federal and state court proceedings are simultaneously being carried out to determine the rights of parties with respect to the same questions of law.  Under such circumstances, it makes little sense for two courts to expend the time and effort to achieve a resolution of the question. However, as in the *Covino* matter, that is not occurring here as the cases are not running concurrently.

New Jersey's entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015). The third circuit has characterized the doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). The doctrine "applies in federal courts when there was a previous state-court action involving the same transaction[.]" *Id.* Its application, however, is limited mandatory joinder of claims[;]" it no longer applies to mandatory joinder of parties. *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011); *accord Ricketti*, 775 F.3d at 614. "[i]n the foreclosure context, the Entire Controversy Doctrine applies only to ... `claims arising out of the mortgage transaction which is the subject matter of the foreclosure action.'" *Shibles v. Bank of Am.*, N.A., No. 16-4357, 2017 WL 2423054, at 5 (D.N.J. June 5, 2017) (*quoting In re Mullarkey*, 536 F.3d 215, 229-230 (3d Cir. 2008)).

Further, as was ruled in *Alfaro v. Wells Fargo N.A.,* the "entire controversy doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." *Alfaro v. Wells Fargo N.A.*, Civil Action No. 16-7950, (NJD Nov. 1, 2017) *Citing*

*In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). Much like in that case, all claims that existed after the judgment was entered should survive in this matter. "It has long been the rule that principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ir. v. Compagnie des Bauxite de Guinee*, 456 U.S. 694, 702 n.9 (1982).

Pursuant to the Entire Controversy Doctrine, Plaintiffs must raise any claims "germane" to the foreclosure proceeding, in the state foreclosure court action. *See In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008).* A claim is "germane" to the foreclosure proceeding when it arises "out of the mortgage transaction which is the subject matter of the foreclosure action." *See id. at 229-30.* However, and most importantly, the court in *Leisure Technology-Northeast v. Klingbeil Holding Co.*, illustrates that the entire controversy doctrine has a narrower application to foreclosure proceedings, extending only to "germane" counterclaims. *Leisure Technology-Northeast v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96 (1975). "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." Id.

Under *NJ Rule 4:64-5*, only germane counterclaims may be raised in foreclosure actions. That 'germaneness' requirement is not satisfied in this case. On its face, Rule 4:64-5 establishes two categories of counterclaims that may arise in a foreclosure action. *Luppino v. Mizrahi*, 326 N.J. Super. 182, 184-85 (App. Div. 1999). First, the rule explains that "non-germane" claims cannot be brought as counterclaims in the foreclosure action, and thus they must be exempt from preclusion under the entire controversy doctrine. *Id.* For example, because a claim for unpaid rent is non-germane to a foreclosure action, it cannot be joined as a counterclaim in that same foreclosure action; naturally, a later suit for rent would not be barred by the entire controversy

doctrine. *Id.* Further, the plain language of Rule 4:64-5 unambiguously establishes counterclaims brought in foreclosures actions must be germane, but that they remain permissive. *Youssef Genid V. J.P. Morgan Chase & Company*, Docket A-2570-14  Nothing in Rule 4:64-5 mandates all germane counterclaims must be brought in the foreclosure action. *Id.* The court stated that because the claims before this court do not "arise from … the same transaction or series of transactions" that were the subject of the underlying state-court action, they should not be dismissed. *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015).

Additionally, the RICO claim can and should withstand Summary Judgment. The facts in this case warrant the claim against Wells Fargo at a minimum, and given their substantial history of bad faith against its consumers, the facts pled here should go beyond a doubt that Wells Fargo is liable under the RICO claim. AS was stated in the order denying the motion to dismiss in the *Prince v. BAC* matter "A civil RICO claim requires proof of four elements: (1) the existence of an enterprise engaged in or affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. Annulli v. Panikkar, 200 F.3d 189, 198 (3d Cir. 1999); see Munsif v. Cassel, 331 F. App'x 954, 958 (3d Cir. 2009). A plaintiff must allege "at least two acts of racketeering activity" within a ten year period. Pub. L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968. All predicate acts are, by definition, crimes. See 18 U.S.C. § 1961(1) (defining "racketeering activity" as any act chargeable under state criminal laws or any act indictable under federal laws)." (*See Exhibit B Order of Prince v. BAC Case 2:16-cv-01544-JCJ (EDPA – dated August 8, 2017).*

As in the *Prince* matter, "Defendants' main argument for dismissing this claim is that Plaintiffs have not pleaded an injury to their business or property." *(See Exhibit B at page 9).* Further,

as stated in that case, "The factual allegations, accepted as true and construed in the light most favorable to Plaintiffs, indicate that Plaintiffs suffered financial injury that may partly form the basis of a civil RICO claim." *(See Exhibit B at page 9).* As in that case, the Plaintiff in this matter has stated a claim that can be considered valid under the RICO claim against Wells Fargo. As such, the claim should not be dismissed, nor should the others.

As to the RESPA claim(s), the court makes clear in *Bukowski v. Wells Fargo,* that if a loan servicer fails to abide by its borrower inquiry obligations, RESPA allows a plaintiff to recover two types of damages. *Bukowski v. Wells Fargo*, No. 17-3253 3rd Cir., December 13, 2018. First, the borrower may recover actual damages if he or she proves that (1) the loan servicer violated a particular RESPA requirement and (2) actual damages were sustained "as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). *See also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001) (en banc) (noting that "there must be a 'causal link' between the alleged [RESPA] violation and the damages"). Second, a borrower may seek statutory damages up to $2,000 if the damages are based on "a pattern or practice of noncompliance. . . ." 12 U.S.C. § 2605(f)(1)(B). In this case, the damages are clear; the Defendants have caused Plaintiff severe damage from the actions as stated in the Complaint.

### III. Jeremy Doppelt Realty Management, LLC's Motion To Dismiss Should Be Denied

While it is accurate to say not all claims are valid against this Defendant, it is accurate that at minimum, Unjust Enrichment, but Defendant's own admission.

In establishing a claim for unjust enrichment, "a plaintiff must show both that Defendants received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 NJ. 539, 554 (1994). In this case, there is no question Defendants

received a benefit, by receiving the property in this matter from the Foreclosure sale. However, but for the other Defendants' improper actions, this sale never would have taken place. Further, Defendant admits they sold the property, meaning they were unjustly enriched by the sale. As such, they have been unjustly enriched by the actions taken by the other parties, as well as their own. The mere fact they were "innocent purchasers" doesn't mean they were no unjustly enriched by the improper actions of the other parties.

Further, this Defendant also claims that Rooker-Feldman applies to the claims against it. For the reasons previously stated, this is not, and cannot be accurate.

### IV. <u>Powers Kirn Motion to Dismiss Must be Denied.</u>

In this motion and in the motion to strike, Powers Kirn focuses substantial energy in bringing up unrelated cases and in fact tries to portray it in a "scandalous" manner to try and sully Plaintiff's attorney. These cases not only have nothing to do with this matter, but are entirely unrelated as this case was not even "initiated" by Plaintiff's attorney, but instead, he stepped in after the fact. As for the service issues, Plaintiff's attorney cured them as quickly as possible, and even with Plaintiff attempting to make a large issue out the service, it was eventually effectuated, meaning their argument is not only moot, but frivolous.

Further, as stated above, Rooker-Feldman similarly does not apply to any claims against this firm, nor does the Entire Controversy doctrine. These doctrines simply do not apply to claims that could not have been brought in the prior Foreclosure action, as was stated quite clearly in the Kachur matter. (see Exhibit A – Kachur Order).

Defendant Powers Kirn does try to raise two other novel arguments not previously discussed. The first is that they are not a debt collector. As stated in the relatively recent case, *Tepper v Amos*, No. 17-2851 3rd Cir., Aug. 7, 2018, The Court discussed the "default" test and

ultimately choose to say that, based on the Supreme court case of *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), it would no longer apply. Instead, the court chose to follow the plain text of the statute: "an entity whose principal purpose of business is the collection of any debts is a debt collector regardless whether the entity owns the debts it collects. *Id.*

Further, the FDCPA is a "remedial legislation" aimed, as already noted, "to eliminate abusive debt collection practices by debt collectors." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting § 1692(e); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013)). Importantly, it applies only to "debt collectors," *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), defined as any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition); or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects for another," or "regularly collects," definition).1 § 1692a(6). Further, and most importantly, **"The FDCPA is a strict liability statute to the extent that it imposes liability without proof of an intentional violation."** *Allen ex. rel, Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

As stated previously, the Supreme Court, in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), has recently repealed the "default" test. Debtors claimed that Santander Bank, which had purchased their loans already in default and attempted to collect on them, met the second definition of "debt collector," i.e., one who "regularly collects or attempts to collect . . . debts owed or due . . . another." Id. at 1721 (quoting § 1692a(6)). They asserted as well that the Bank met the "principal purpose" definition, but the Court did not review that claim because it was not litigated in the District Court. Id. The Supreme Court began "with a careful examination of the statutory

text," in particular the definition's limitation to debts "owed . . . another." Id. It reasoned that "by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." Id. This language does not suggest that "whether the owner originated the debt or came by it only through later purchase" determines if it is a debt collector. Id. "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" Id. Hence the Bank, which collected debts for its own account, did not meet the "regularly collects for another" definition. Id. at 1721–22. The Court also addressed the suggestion that everyone who attempts to collect debt is either a "debt collector" or a "creditor" with respect to a particular debt, but cannot be both. Id. "[S]potting (without granting) th[at] premise," it stated that a company such as the Bank, which collects on debt it purchased for its own account, "would hardly seem to be barred from qualifying as a creditor under the statute's plain terms." Id. But excluded from the definition of "creditor" are those who acquire a debt after default when the debt is assigned or transferred "solely for the purpose of facilitating collection of such debt for another." Id. (quoting § 1692a(4)).

Further, there was a recent ruling in this Supreme Court, *Obduskey v. Mccarthy & Holthus LLP*, 39 S.Ct. 1029 (2019). In that case, the court held that A business engaged in no more than nonjudicial foreclosure proceedings is not a "debt collector" under the FDCPA, except for the limited purpose of § 1692f(6). *Obduskey v. Mccarthy & Holthus LLP*, 39 S.Ct. 1029, 1032 (2019). This severely limited the defenses Defendants have in this matter as to claiming they are not debt collected. First, they were not attempting a "nonjudicial foreclosure" no matter that the "germane" defenses in a foreclosure action are very few, it is still technically a Judicial Foreclosure. As such, the protections in that case do not apply to this party. Further, the court made clear that the prohibitions contained in § 1692f(6) will cover security-interest enforcers, while the other "debt

collector" provisions of the Act will not. *Obduskey v. Mccarthy & Holthus LLP*, 39 S.Ct. 1029, 1032 (2019). The actions stated in the complaint would fall into the category, meaning that the rules would apply to this firm. As such, the motion to dismiss on those grounds should be denied as well.

Second, the Defendants claim they are protected by the Noerr-Pennington doctrine. This doctrine arises from anti-trust law, where it allows competitors to exercise their right to petition legislatures on a common basis. *See Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 499-501 (1988). "The Noerr-Pennington doctrine . . . protects citizens from being penalized for exercising their first amendment right to petition the government." *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 261 (D.N.J. 2003). "Rooted in the First Amendment and fears about the threat of liability chilling political speech," the doctrine immunizes private parties, "who attempted to influence government action – even where the petitioning had anticompetitive effects," from federal antitrust laws. *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001). Although the doctrine originated in the antitrust context, it has been extended on a limited basis "to offer protection to citizens' petitioning activities in contexts outside the anti-trust area as well." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999); *see also BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002) (applying the doctrine to the National Labor Relations Act); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (doctrine applied to tort liability for actions based on petitions to the government to shut down a nursing home that was in violation of various regulations). Generally, in order to receive Noerr-Pennington immunity, Defendants must

have petitioned the government for redress. *See A.D. Bedell*, 263 F.3d at 250. In this case, the Doctrine has no application what so ever. While Defendant may have simply included it so they could try and claim the pleadings are a "sham" that has absolutely no basis in law or fact as to why such an improper doctrine should apply as a defense in this case.

## V. <u>Powers Kirn's Procedurally Improper Motion to Strike Must Be Denied.</u>

Rule 12(f) of the Federal Rules of Civil Procedure authorizes a trial court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970 (9th Cir. 2010). Under Rule 12(f), litigants may move to only strike specific material included in the other party's pleadings. The motions to strike are limited to addressing "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *In re 2TheMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). Because "the Court must view the pleadings in a light most favorable to the pleading party," a 12(f) motion to strike will rarely be granted. *In re 2TheMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). "Immaterial" means that the matter has *no bearing* on the controversy before the court. . . . If there is *any* doubt as to whether the allegations might be an issue in the action, courts will deny the motion. . . . "Impertinent" has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence. *Id.* The difficulty in demonstrating that language in a pleading is "scandalous" and must be stricken is similarly great. In *Skadegaard v. Farrell*, 578 F.Supp. 1209 (D.N.J. 1984).

Defendant's procedurally improper motion utterly lacks merit and was filed for an improper purpose, trying to strike an entire pleading, whereas 12(f) is **only** for specific parts of a pleading. Its denial should be compounded by a corresponding levy of sanctions and costs against

Defendant Powers Kirn. Defendants have used both the Third Party Complaint, the motion to dismiss and the filing of the motion to strike, not as a means to filter a frivolous claim but as a bullying tactic intended to intimidate Plaintiffs into withdrawing legitimate claims and further, in a brazen attempt to actually include material in a "scandalous" manner, which is exactly what F.R.C.P. was designed to prevent. The answer includes nothing scandalous, and in fact gives substantial details as to why the complaint should be dismissed and is entirely improper.

This misuse of Rule 12(f) is in and of itself sanctionable under Rule 11. The standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.").

Defendants' motion fails not only for its lack of merit, but it also violates the ethical underpinnings of Rule 11. Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, Park v. Seoul Broad. Sys. Co*., 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008). Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous. *See Abdelhamid v. Altria Group, Inc*., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)("'When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'") However,

14

Defendant's motion would qualify, given that the entire purpose is to simply include irrelevant cases in a brazen attach on Plaintiff's attorney. As such, it should be denied and sanctions granted.

Alternatively, Plaintiff requests pursuant to F.R.C.P. 15(a)(2) to amend the answer to address any perceived deficiencies from the motion to dismiss that was filed. According to F.R.C.P. 15(a), leave to amend the pleadings is generally granted liberally. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). "Accordingly, if a claim is vulnerable to dismissal under *Rule 12(b)(6)*, but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). As such, if the court is leaning to grant the motion to strike, we ask in the alternative that we permitted to file an amended answer to clarify any factual questions and make clear which claims are new, unheard in any court at all, and can and should still be pursued.

Dated: August 29, 2019                              /s/ Joshua Thomas_____
                                                    Joshua L. Thomas, Esq.
                                                    Joshua L. Thomas & Associates
                                                    225 Wilmington-West Chester Pike Suite 200
                                                    Chadds Ford, PA 19317
                                                    Phone: 215-806-1733
                                                    Fax: 888-314-8910
                                                    Email: JoshuaLThomas@gmail.com
                                                    Atty ID# 003992012
                                                    Attorney for Plaintiff

# EXHIBIT A

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PETER J. KACHUR and MARY J.
KACHUR,

               Plaintiffs,

      v.

WMC MORTGAGE CORPORATION *et al.*,

              Defendants.

Civ. No. 18-15111

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants J.P. Morgan Chase Bank, N.A.; U.S. Bank National Association as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC4, Asset-Backed Pass-Through Certificates, Series 2006-WMC-4 (improperly pled as "J.P. Morgan Chase Acceptance Corporation I") ("Defendant Trust"); US Bank, N.A.; and Issuing Entity Trust J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 (collectively, "Moving Defendants"). (ECF No. 13.) Plaintiffs Peter J. Kachur and Mary J. Kachur (collectively, "Plaintiffs") oppose. (ECF No. 20.) The Court has decided the Motion based on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted in part and denied in part.

## BACKGROUND

This case arises from a note and mortgage that eventually led to the foreclosure of Plaintiffs' real property. On August 10, 2006, Plaintiffs and Defendant WMC Mortgage

1

Corporation (which has not moved for summary judgment) executed a note and mortgage. (Moving Defs.' Stmt. of Undisputed Material Facts ("SUMF") ¶¶ 1–2, ECF No. 13-3; Compl. ¶¶ 32–34, ECF No. 1.) On May 1, 2010, Plaintiffs failed to make a monthly payment and thus entered default. (SUMF ¶ 5.) The mortgage was assigned to Defendant Trust on December 10, 2010, which was recorded on April 15, 2011. (*Id.* ¶ 4.)

On October 19, 2015, Defendant Trust initiated foreclosure proceedings against Plaintiffs in New Jersey Superior Court, Chancery Division, Middlesex County. (*Id.* ¶ 6; Super. Ct. Compl., ECF No. 13-6.)[1] In opposing foreclosure in state court, Plaintiffs argued that the mortgage was not properly securitized and transferred. (Super. Ct. Contesting Answer ¶ 2, ECF No. 13-6; Super. Ct. Opp'n to Mot. for Summ. J. at 2–3, 6, 12, ECF No. 13-8.) Therefore, Plaintiffs argued, Defendant Trust had no standing to bring foreclosure proceedings. (Super. Ct. Counterclaim 1st Count ¶¶ 1–10, ECF No. 13-6; Super. Ct. Opp'n to Mot. for Summ. J. at 4–6.) The Superior Court granted judgment for Defendant Trust; struck Plaintiffs' answer, affirmative defenses, and counterclaims; and ordered a sheriff's sale of the property to satisfy Plaintiffs' debt. (Super. Ct. Order Granting Summ. J. ¶¶ 1–2, ECF No. 13-8; Super. Ct. Final J., ECF No. 13-8; *see also* Super. Ct. Order Dismissing Appeal, ECF No. 13-8.)

Plaintiffs filed the present suit on October 19, 2018. (Compl. at 1.) In the Complaint, Plaintiffs claim that the note and mortgage were never properly transferred from Defendant WMC Mortgage Corporation to Defendant Trust or any other party. (*Id.* ¶¶ 21–24, 48.) They also claim that

> Defendants . . . cannot establish possession [or] show proper receipt, transfer,

---

[1] References to "Plaintiffs" and "Defendants" refer to the parties' postures in this case, not in the foreclosure action. All ECF numbers refer to this case's docket.

negotiations, assignment and ownership of the Tangible Mortgage Note [and have not] perfected any colorable claim of title or security interest in the Real Property. [Therefore,] none of the parties to transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Real Property; and . . . all Defendants are equitably estopped and precluded from asserting an unsecured claim against Plaintiffs' estate.

(*Id.* ¶ 26.) Plaintiffs seek "a judicial determination and declaration of their rights about the Real Property and the corresponding Tangible Mortgage Note" as well as damage, injunctive relief, and "cancellation of [certain] written instruments." (*Id.* ¶¶ 27–28.)

The Complaint alleges fourteen counts in all: (1) unjust enrichment (*id.* ¶¶ 51–54); (2) violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Cons. Stat. § 2270.1 *et seq.* (Compl. ¶¶ 55–60); (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Compl. ¶¶ 61–68); (4) lack of standing/wrongful foreclosure (*id.* ¶¶ 69–82); (5) quiet title (*id.* ¶¶ 83–90); (6) slander of title (*id.* ¶¶ 91–96); (7) fraud in the concealment (*id.* ¶¶ 97–105); (8) fraud in the inducement (*id.* ¶¶ 106–13); (9) unconscionable contract (*id.* ¶¶ 114–21); (10) breach of contract (*id.* ¶¶ 122–26); (11) rescission under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (Compl. ¶¶ 127–31); (12) intentional and negligent infliction of emotional distress (*id.* ¶¶ 132–35); (13) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Compl. ¶¶ 136–45); and (14) declaratory and injunctive relief (*id.* ¶¶ 146–50).

On February 7, 2019, Moving Defendants filed the present Motion for Summary Judgment. (ECF No. 13.) After receiving extensions of time (ECF Nos. 16, 19), Plaintiffs opposed the Motion on April 30, 2019 (ECF No. 20).[2] Moving Defendants replied on May 6,

---

[2] Plaintiffs did not, however, file a response to Moving Defendants' Statement of Undisputed Material Facts.

2019. (ECF No. 21.) On June 25, 2019, this case was reassigned to the Honorable Anne E. Thompson. (ECF No. 22.) The Motion is presently before the Court.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Consequently, "[s]ummary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

For the reasons explained below, summary judgment is granted for Moving Defendants

4

on all Counts except for Counts Three, Seven, and Eight.

## I.    Summary Judgment Is Granted on Claims Relitigating State-Court Proceedings (Counts Four, Five, Six, and Fourteen)

The *Rooker-Feldman* doctrine eliminates several of Plaintiffs' claims. This doctrine bars

suits that ask federal district courts to reverse state-court decisions. *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It applies where "(1) the federal plaintiff lost in

state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those

judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the

district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon*, 544 U.S. at 284) (internal

quotations and brackets omitted). In a recent case, this Court applied *Rooker-Feldman* to dismiss

a federal suit that attempted to halt a state-court foreclosure action:

> Plaintiff challenged his foreclosure in state court, filing numerous motions and appeals, to which Plaintiff admits. Plaintiff alleged in the state-court proceedings that the foreclosure was fraudulent, and Plaintiff alleges much of the same here. . . . Plaintiff was denied relief in state court, and now seeks similar relief here in federal court. Because Plaintiff seeks "[i]mmediate cessation of any State Court Eviction Proceedings," which plaintiff already sought in state court, the *Rooker-Feldman* doctrine prevents the Court from entertaining the Complaint as it lacks jurisdiction to do so.

*Kajla v. Cleary*, 2019 WL 77067, at *3 (D.N.J. Jan. 2, 2019) (internal citations omitted).

Counts Four, Five, Six, and Fourteen all run afoul of *Rooker-Feldman* because finding

for Plaintiff on any of these counts would require reversal of the judgment in the state-court

foreclosure action. Count Four is based on the contention that Defendants lack standing to

foreclose on Plaintiffs' property. (Compl. ¶¶ 69–82.) Count Five seeks to quiet title. (*Id.* ¶¶ 83–

90.) Count Six is based on the theory that Defendants made a "false statement derogatory to

Plaintiffs' title." (*Id.* 96.) And Count Fourteen seeks declaratory judgment that Defendants

5

cannot sue to collect receivables and an injunction to stop them from doing so. (*id.* ¶¶ 146–50).[3]

Summary judgment is granted for Moving Defendants on these Counts.[4]

## II.   Summary Judgment Is Granted on Claims that Do Not Implicate Moving Defendants (Counts One, Nine, and Ten)

Counts One, Nine, and Ten appear to implicate only Defendant WMC Mortgage

Corporation. (Compl. ¶¶ 51–54, 114–26.) This issue was raised by Moving Defendants (Mot. at

9, 21, 22), and Plaintiffs have not demonstrated how Moving Defendants are liable under these

counts.[5] Summary Judgment is therefore granted for Moving Defendants.

## III.   Summary Judgment Is Granted on Claims Barred by Statutes of Limitations (Counts Eleven and Twelve)

Count Eleven is brought under the Truth in Lending Act. (Compl. ¶¶ 127–31.) The Truth

in Lending Act requires various disclosures shortly before certain transactions occur, 15 U.S.C. §

1639(a), (b), and allows claims to be brought "before the end of the 3-year period beginning on

the date of the occurrence of the violation." § 1640(e). Any failure to disclose would have

---

[3] It is somewhat unclear which Defendants are being sued under Count Fourteen. Defendant WMC Mortgage Corporation is specifically named (Compl. ¶ 150) but is not moving for summary judgment here. Count Fourteen cannot target Defendant Trust because that would implicate Defendant Trust's position in the state-court foreclosure action and thus violate *Rooker-Feldman*. Equitable relief cannot be granted against any other Moving Defendant because there is no immediate possibility of harm from these Defendants. *See* 28 U.S.C. § 2201 (requiring an "actual controversy" for declaratory judgment); *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979) (requiring that, for declaratory judgment purposes, the controversy be "of sufficient immediacy"); *City of Los Angeles v. Lyons*, 461 U.A. 95, 111 (1983) (holding that injunctive relief requires "likelihood of substantial and immediate irreparable injury" that cannot be "speculative").

[4] When the Complaint was filed, Plaintiffs sought a temporary restraining order that would prohibit the sale of their property. (Verified Emergency Petition, ECF No. 1-6; Proposed Temporary Restraining Order, ECF No. 1-2.) Such a temporary restraining order would reverse the state-court judgment, so Plaintiffs' request is also denied on *Rooker-Feldman* grounds.

[5] Under Count One, Plaintiffs posit a theory of liability based on Defendants' attempt "to gain possession of Plaintiff[s'] house through an unlawful Sheriff sale." (Opp'n at 7.) But this is not a sturdy foothold for liability because of the *Rooker-Feldman* doctrine.

occurred in 2006, around the time that Plaintiffs executed the note and mortgage (SUMF ¶¶ 1–2), well more than three years before the Complaint was filed.[6]

Count Twelve asserts intentional infliction of emotional distress and negligent infliction of emotional distress. (Compl. ¶¶ 132–35.) Both causes of action have a two-year statute of limitations. N.J.S.A. § 2A:14-2(a); *Agcaoili v. Thayer*, 365 F. App'x 372, 375 (3d Cir. 2010); *Fraser v. Bovino*, 721 A.2d 20, 25 (N.J. Super. Ct. App. Div. 1998). Count Twelve appears to apply only to Defendant WMC Management Corporation (*see* Compl. ¶ 134), and Moving Defendants appear to be implicated, if at all, by the transfer of the note in 2010 (*id.* ¶ 133). Thus, any emotional distress was inflicted outside the two-year statute of limitations. Statutes of limitations therefore compel summary judgment for Moving Defendants on Counts Eleven and Twelve.

## IV.   Summary Judgment Is Granted as to Count Two Because No Facts Connect This Case to Pennsylvania

Count Two arises under the Pennsylvania FCEUA, 73 Pa. Cons. Stat. § 2270.1 *et seq.* The FCEUA protects "consumers" against "debt collectors" and "creditors." 73 Pa. Cons. Stat. 2270.4. But the statute defines "consumers," "debt collectors," and "creditors" to include only those with particular connections to the Commonwealth of Pennsylvania. 73 Pa. Cons. Stat. § 2270.3 (defining "consumer" as "[a] natural person residing in this Commonwealth . . . or one who has incurred or is alleged to have incurred liability for [a] debt within this Commonwealth,"

---

[6] Plaintiffs argue for application of the continuing violation doctrine, which applies when acts "are linked in a pattern of actions which continues into the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). But Plaintiffs do not allege a continuing violation; they allege a discrete legal wrong—the failure to disclose required information—that occurred in 2006.

7

defining "debt collector" as "[a] person . . . conducting business within this Commonwealth,"

and defining "creditor" as "[a] person . . . conducting business under the name of a creditor and

within this Commonwealth"). Neither the Complaint nor any evidence presented from the record

ties Plaintiffs or Moving Defendants to Pennsylvania, so the FCEUA does not apply. Summary

judgment is granted on this Count.

**V.      Summary Judgment Is Denied as to Count Three Because a Reasonable Jury Could Find Moving Defendants to Be Debt Collectors Under the FDCPA**

Count Three alleges violation of the FDCPA. (Compl. ¶¶ 61–68.) Moving Defendants'

sole argument for summary judgment on this Count is that they are not "debt collectors" under

the statute. (Mot. at 14–15.)

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Thus, a debt collector *either* (1) has the principal purpose of debt

collection, *or* (2) regularly collects another person's debts. *Id.* So even if Moving Defendants

collect their own debts, they could still be debt collectors under the "principal purpose"

definition. *See Tepper v. Amos Fin., LLC*, 898 F.3d 364, 367 (3d Cir. 2018) (citing *Henson v.

Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721–22 (2017)). Moving Defendants claim

that they cannot be both creditors and debt collectors with regard to the same debt, but the statute

contemplates that a single actor can be both. *Id.* at 371. Moving Defendants also argue that they

cannot be considered debt collectors if they purchased the debt before it went into default, *see* §

1692a(6)(F)(iii) (exempting those collecting "a debt which was not in default at the time it was

obtained by such person"), but this "default test" does not apply to debt collectors defined by the

"principal purpose" test, *Tepper*, 898 F.3d at 370. A reasonable jury could find facts to support

the conclusion that Moving Defendants are debt collectors under the FDCPA—particularly given

that no party has submitted record evidence related to the "principal purpose" standard.

Summary judgment on this Count is denied.

**VI.    Summary Judgment Is Denied as to Counts Seven and Eight Because *Rooker-Feldman* Does Not Apply and Moving Defendants Have Not Shown that the Statute of Limitations Has Run**

Count Seven alleges fraud in the concealment, claiming that Defendants concealed the

fact that Plaintiffs' note and mortgage would be securitized. (Compl. ¶ 98.) Count Eight alleges

fraud in the inducement on the theory that Defendants misrepresented their ability to transfer the

note and mortgage. (*Id.* ¶¶ 107–08.) For both Counts, Plaintiffs claim that, had they known the

truth, they would not have agreed to execute the note and mortgage. (*Id.* ¶¶ 99, 109.)

Moving Defendants argue that these fraud claims are barred by *Rooker-Feldman* (as well

as issue preclusion and claim preclusion) because they "appear[] to challenge the Trust's

ownership and standing to enforce the Note and Mortgage," issues which were adjudicated in the

state-court foreclosure action. (Mot. at 20.)[7] But Plaintiffs do not challenge anyone's ability to

enforce the note and mortgage. Rather, they claim that they never would have agreed to execute

the note and mortgage in the first place, had it not been for Defendants' alleged

misrepresentations. Because Plaintiffs are not challenging the state court's determinations here,

*Rooker-Feldman* does not apply.

Separately, Moving Defendants argue that the statute of limitations bars Counts Seven

and Eight. Both causes of action have a six-year statute of limitations that "begins to run on

discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the

---

[7] Similarly, Moving Defendants claim that "Plaintiffs do not have standing to challenge the securitization and transfer to the trust." (Mot. at 19.)

fraud." N.J.S.A. § 2A:14-1; *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999). When Plaintiffs discovered the required facts is not clear. Plaintiffs should have known that something was awry by around October 23, 2014, for on that date they were sent a Notice of Intention to Foreclose that named Defendant Trust as the lender. (Notice at 1, ECF No. 13-7.) The Court has not been presented with any evidence showing that Plaintiffs would have had reason to know before 2014.[8] Thus, the Court cannot conclude that the statute of limitations bars these claims. Summary judgment is denied as to Counts Seven and Eight.

## VII. Summary Judgment Is Granted as to Count Thirteen Because Plaintiffs Do Not Demonstrate a Pattern of Racketeering Activity

Count Thirteen alleges RICO violations by Defendants. (Compl. ¶¶ 136–45.) To succeed on a RICO claim, a plaintiff must demonstrate, among other things, that the defendant participated in a pattern of racketeering activity. 18 U.S.C. §§ 1962(c), 1964(c); *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). A pattern requires at least two predicate acts of racketeering activity. *Id.* (citing § 1961(5)). "Racketeering activity" includes a long list of federal crimes, including mail fraud, § 1341, wire fraud, § 1343, financial institution fraud, § 1344, and interference with commerce by robbery or extortion, § 1951. *See* § 1961(1).

The Complaint pleads that "Defendants have devised a scheme to defraud and obtain money by means of fraudulent pretenses by selling or assigning a debt that they no longer owed . . . and then misrepresenting its ownership of the debt while still collecting on such debts in its own name without actual ownership." (Compl. ¶ 141.) It also asserts that "Defendants have

---

[8] The loan was securitized in 2006. (SUMF ¶ 3.) It was assigned to Defendant Trust in 2010, which was recorded in 2011. (*Id.* ¶ 4.) But there is no reason to think that Plaintiffs would have known about the securitization or assignment when they happened.

10

attempted to extort Plaintiffs by threatening to foreclose . . . . based upon invalid and indeed

illegal debt collection practices." (*Id.* ¶ 144.) But the state court has already found that Defendant

Trust was legally entitled to seek foreclosure, so *Rooker-Feldman* precludes this Court from

reversing that determination. Plaintiffs have provided no further evidence of racketeering activity

in their summary-judgment briefing. Because Plaintiffs have not put forward facts that a

reasonable jury could accept as establishing a pattern of racketeering activity, summary

judgment for Moving Defendants on Count Thirteen is granted.

## **CONCLUSION**

For the foregoing reasons, Moving Defendants' Motion for Summary Judgment is

granted in part and denied in part. An appropriate Order will follow.

Date:   8/14/19          /s/ Anne E. Thompson
                         ANNE E. THOMPSON, U.S.D.J.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH W. PRINCE , et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BAC HOME LOANS SERVICING, L.P., et al. | : | NO. 16-cv-1544 |

ORDER

AND NOW, this 8th day of August 2017, upon consideration of Defendants' Motion to

Dismiss the Second Amended Complaint (Doc. No. 23), Plaintiffs' Response in Opposition

(Doc. No. 25), and Defendants' Reply (Doc. No. 28), it is hereby ORDERED:

1. Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 23) is
GRANTED in part and DENIED in part.

   a. With respect to the claim pursuant to Regulation Z, 12 C.F.R. § 1024.41, in
   Count I of the Second Amended Complaint (Doc. No. 22), Defendants'
   Motion to Dismiss (Doc. No. 23) is GRANTED. Count I of the Second
   Amended Complaint is DISMISSED WITH PREJUDICE.

   b. With respect to Count II of the Second Amended Complaint (Doc. No. 22),
   Defendants' Motion to Dismiss (Doc. No. 23) is GRANTED. Count II of the
   Amended Complaint DISMISSED WITH PREJUDICE.

   c. With respect to Count III of the Second Amended Complaint (Doc. No. 22),
   Defendants' Motion to Dismiss (Doc. No. 23) is DENIED.

   d. With respect to Count IV of the Second Amended Complaint (Doc. No. 22),
   Defendants' Motion to Dismiss (Doc. No. 23) is DENIED.

   e. With respect to Count V of the Second Amended Complaint (Doc. No. 22),
   Defendants' Motion to Dismiss (Doc. No. 23) is DENIED.

   f. With respect to Count VI of the Second Amended Complaint (Doc. No. 22),
   Defendants' Motion to Dismiss (Doc. No. 23) is GRANTED. Count VI of the
   Second Amended Complaint DISMISSED WITH PREJUDICE.

Joseph W. Prince and his wife, Betty Jo Prince, filed this action against BAC Home Loans Servicing, L.P., Bank of America N.A., and Citimae Inc., alleging federal and state law claims arising from a loan modification agreement for a promissiory note secured by a mortgage on their property. Second Amended Compl. (Doc. No. 22). Before this Court is Defendants' Motion to Dismiss the Second Amended Complaint. Despite multiple attempts, Plaintiffs have failed to allege three of the six claims for which relief may be provided. Accordingly, Defendants' motion is granted in part and denied in part, and those claims for which the Defendants' motion is granted are dismissed with prejudice.

I.     Factual and Procedural Background

In 1991, the Princes obtained a fixed-rate loan from Arbor National Mortgage, Inc., secured by real property in Yardley, Pennsylvania. Second Amended Compl.,at ¶¶ 2A–2C. The Princes allege that their monthly payments began at about $2,700 and later fluctuated without explanation to as high as $4,800. Id. at ¶¶ 2D–2G. Plaintiffs also allege that, on multiple occasions, they requested an accounting of payments but Defendants did not comply. Id. at ¶¶ 2H–2I. Nevertheless, Plaintiffs assert, despite the fluctuations, they made timely mortgage payments for almost twenty years. Id. at ¶ 2J.

In March 2010, Bank of America, which had acquired the Princes' note through a de jure merger with BAC Home Loans Servicing, L.P., and Citimae, Inc., filed a foreclosure action against Plaintiffs in the Bucks County Court of Common Pleas. Id. at ¶¶ 2Y, 2Z, 2AA, 2BB. Plaintiffs assert that, in 2010, their business went bankrupt and they incurred extensive medical bills after their daughter became ill. Id. at ¶ 2K. They further assert they sought a loan modification agreement with Bank of America by submitting an application and supporting documents, and Defendants failed to respond for "almost six years." Id. at ¶¶ 2L–2P, 2Q, 2U,

2V. Finally, around September 1, 2015, Plaintiffs entered in a loan modification agreement with Bank of America, which then dismissed the foreclosure action. Id. at ¶¶ 2BB–2DD.

In April 2016, the Princes brought this action, asserting they were harmed because they "agreed to a horrible loan modification" to stave off the impending foreclosure sale. Defendants moved to dismiss; Plaintiffs responded with an amended complaint. Defendants then filed a motion to dismiss the amended complaint. This Court granted in part and denied in part Defendants' motion to dismiss the amended complaint, giving Plaintiffs leave to amend some of the claims.

In the Second Amended Complaint, Plaintiffs assert largely the same claims: (1) fraud in violation of Regulation Z, 12 C.F.R. § 1024.41; (2) a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*; (3) a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. C.S. § 201–1 *et seq.*; (4) breach of contract; (5) wire fraud in violation of 18 U.S.C. § 1343; and (6) a violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq*. Defendants have filed a motion to dismiss the Second Amended Complaint. Def. Second Mot. to Dismiss (Doc. No. 23). Because the Plaintiffs have failed to state a cause of action for which relief can be granted, despite multiple attempts, Defendant's motion to dismiss is granted as to all claims other than the breach of contract claim.

II.    Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), a district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009). A complaint need only contain "a short and plain statement of the claim" that

pleads "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P.

8(a)(2); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555, 570 (2007). In resolving a motion to dismiss, the court conducts a two-part analysis:

first, separate the factual and legal elements of a claim, Fowler, 578 F.3d at 210–11, and second,

determine whether the factual matter in the complaint "state[s] a claim to relief that is plausible

on its face." Iqbal, 556 U.S. at 678.

Ordinarily, a plaintiff must be afforded an opportunity to amend his or her complaint

when it is dismissed for failure to state a claim, unless a curative amendment "would be

inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

III.    Analysis

This Court has federal question jurisdiction over Plaintiffs' claims arising under federal

laws and regulations, and diversity and supplemental jurisdiction over their state law claims. 28

U.S.C. §§ 1331, 1332(a); Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27–

28 (1983).

a. Citimae

Although Plaintiffs refer to Citimae in passing in the Second Amended Complaint, they

assert no claim or allegation against the entity. In this Court's previous order granting in part and

denying in part Defendants' motion to dismiss, this Court noted Plaintiffs had pleaded no fact

concerning Citimae in the Amended Complaint and granted leave to amend. Given that Plaintiffs

have not done so in the Second Amended Complaint, Citimae is dismissed from this action. See

Twombly, 550 U.S. at 570 (where a complaint does not plead "enough facts to state a claim to

4

relief that is plausible on its face" with respect to a defendant, the defendant must be dismissed from the complaint).

b.  Count I: Fraud in Violation of Regulation Z

Plaintiffs continues to allege Defendants committed fraud under Pennsylvania law by representing that the loan modification application "would be given fair, due and appropriate evaluation" and that Defendants made this representation despite knowledge that they "had no intention of doing so" and "had no authority and standing to do so." Second Amended Compl., Count I at ¶¶ 2A–C, 3. Plaintiffs allege that such conduct violated Regulation Z, 12 C.F.R. § 1024.41, which provides for procedures for loss mitigation of loans and requires servicers to take certain action upon receipt of a loss modification application. See, e.g., 12 C.F.R. §§ 1024.41(b), (c), (d). Additionally, Plaintiffs allege that, after they submitted a loan modification application, Defendants failed to respond to the application for "almost six years." Second Amended Compl., Count I at ¶¶ 2O–2Q. Plaintiff assert such conduct constitutes "unconscionable commercial practices, deception, theft, unlawful taking and conversion, fraud, false pretense and/or misrepresentations" under Pennsylvania law. Id. Count I at ¶ 2. Plaintiffs' continued attempt to assert tort claims under state law is inexplicable, because this Court has previously dismissed with prejudice Plaintiff's tort claims. Order dated Dec. 29, 2016 (Doc. No. 20). Therefore, tort claims under Pennsylvania law in the Second Amended Complaint are dismissed with prejudice.

c.  Count II: a Violation of the Fair Debt Collection Practices Act

Plaintiffs assert a violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, because "Defendants have not provided Plaintiffs with statements, an accounting, payoff and reinstatement of debt verification, [and] other information as was requested." Second Amended Compl., Count II at ¶ 5. The FDCPA provides a remedy for consumers who have been

subjected to abusive, deceptive, or unfair debt collection practices by debt collectors. Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000). A plaintiff must establish four elements to state an FDCPA claim: (1) he or she is a "consumer" who is harmed by violations of the FDCPA; (2) the "debt" arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a "debt collector"; and (4) the defendant has violated, by act or omission, a provision of the FDCPA. 15 U.S.C. §§ 1692a–1692o; see Berk v. J.P. Morgan Chase Bank, N.A., 2011 WL 4467746, at *3 (E.D. Pa. Sept. 26, 2011). As defined by the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). An assignee of an obligation is not a "debt collector" if the obligation is not in default at the time of the assignment; conversely, an assignee may be deemed a "debt collector" if the obligation is already in default when it is assigned. Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 358, fn. 2 (3d Cir. 2015). Further, the Supreme Court recently held that entities that purchase debts originated by someone else and then seek to collect those debts for their own account are not "debt collectors" subject to the FDCPA. Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1722 (2017).

Plaintiffs allege that Defendants are debt collectors because "the loan was in default when an assignment of mortgage was recorded to this Defendant." Second Amended Compl., Count II at ¶ 8. However, because Defendants owned the Princes' loan note when they sought to collect the debt, Defendants were acting on their own behalf, that is, as creditors rather than debt

collectors. Therefore, under <u>Henson</u>, Defendants are not subject to FDCPA.[1] <u>Henson</u>, 137 S. Ct. at 1722. Accordingly, Defendants' motion to dismiss this claim is granted, and Plaintiffs' FDCPA claim is dismissed with prejudice.

    d.   Count III: Consumer Fraud under Pennsylvania Law

Next, Plaintiffs allege Defendants engaged in fraudulent and deceptive practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), which prohibits "unfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of trade or commerce. 73 Pa. C.S. § 201–3, <u>see</u> <u>Hunt v. U.S. Tobacco Co.</u>, 538 F.3d 217, 221 (3d Cir. 2008), as amended (Nov. 6, 2008); <u>Toy v. Metro. Life Ins. Co.</u>, 928 A.2d 186, 190 n. 4 (Pa. 2007). The statute creates a private right of action, requiring a plaintiff to demonstrate (1) unfair methods of competition and unfair or deceptive acts or practices were employed, and (2) an ascertainable loss suffered as a result of such acts or practices. <u>Hunt</u>, 538 F.3d at 221 (citing 73 Pa. Cons. Stat. § 201–9.2). Additionally, a plaintiff must show justifiable reliance on defendant's deceptive conduct, not merely a causal connection between the misrepresentation and the harm. <u>Id.</u> at 221–22 (citing Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001)).

Plaintiffs allege Defendants violated the UTPCPL by making "erroneous" and "random" demands of monthly payments and failing to provide an accounting of payment history. Second Amended Compl., Count III at ¶¶ 13–16. Plaintiffs also assert that they relied on Defendants'

---

[1] Even if Defendants were properly considered debt collectors, Plaintiffs have failed to identify which provisions of the Act were violated and how Defendants violated them, despite multiple attempts to plead the claim. Although Plaintiffs may be attempting to plead a claim under § 1692g, which requires debt collectors to provide certain information to a debtor, such as the amount of the debt, name of the creditor, and status of the debt, Plaintiffs have not pleaded a sufficient basis of their claim. See <u>Jewsevskyj v. Financial Recovery Services, et al.</u>, 2017 WL 2992499, at *2, fn. 6 (3d Cir. July 14, 2017).

demands of monthly payments, despite the fluctuations, and paid the amounts demanded. Id. at ¶ J ("Since originating the loan, Mr. and Mrs. Prince successfully made timely mortgage payments for almost twenty years without incident."). The factual allegations, accepted as true and construed in the light most favorable to Plaintiffs, indicates that Plaintiffs justifiably relied on Defendants' deceptive conduct and were harmed as a result. Therefore, Defendant's motion to dismiss Count III is denied.

e.  Count VI: Breach of Contract

Under Pennsylvania law, a breach of contract claim requires pleading "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349, 363 (E.D. Pa. 2015) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Defendants contend that Plaintiffs failed to identify which agreement they breached, how Defendants breached the agreement, and the resultant harm. This argument is unavailing. Plaintiffs allege that Defendants breached "the contractual terms of the loan/note " by demanding monthly payment amounts that fluctuated between $2,700 and $4,800, despite the loan's fixed interest rate. Second Amended. Compl., Count VI at ¶¶ 21–24. Plaintiffs also allege that they paid these fluctuating monthly amounts. Id. at ¶ J. Therefore, Defendants' motion to dismiss the breach of contract claim is denied.

f.  Count V: Wire Fraud

This Court previously noted that there is no private cause of action for a violation of the federal mail and wire fraud statutes. Order dated Dec. 29, 2016 (Doc. No. 20); see also Addlespurger v. Corbett, 461 F. App'x 82, 87 (3d Cir. 2012); see Hemi Grp., LLC v. City of N.Y., N.Y., 559 U.S. 1, 6, (2010); Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir. 1995). In the

Second Amended Complaint, Plaintiffs attempt to plead a claim alleging a pattern of racketeering under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). A civil RICO claim requires proof of four elements: (1) the existence of an enterprise engaged in or affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. Annulli v. Panikkar, 200 F.3d 189, 198 (3d Cir. 1999); see Munsif v. Cassel, 331 F. App'x 954, 958 (3d Cir. 2009). A plaintiff must allege "at least two acts of racketeering activity" within a ten year period. Pub. L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968. All predicate acts are, by definition, crimes. See 18 U.S.C. § 1961(1) (defining "racketeering activity" as any act chargeable under state criminal laws or any act indictable under federal laws).

Defendants' main argument for dismissing this claim is that Plaintiffs have not pleaded an injury to their business or property. However, Plaintiffs allege, although their loan had a fixed interest rate and their monthly payments began at about $2,700, Defendants demanded, without explanation, monthly payment amounts that were as high as $4,800. Second Amended Compl.,Count III at ¶¶ 2D–2G. Despite the fluctuations, Plaintiffs made timely mortgage payments for almost twenty years. Id. at ¶ 2J. In addition, on multiple occasions, Plaintiffs requested an accounting of payments but Defendants did not comply. Id. at ¶¶ 2H–2I. The factual allegations, accepted as true and construed in the light most favorable to Plaintiffs, indicate that Plaintiffs suffered financial injury that may partly form the basis of a civil RICO claim. Therefore, Defendants' motion to dismiss Count V is denied.

g.  Count VI: a Violation of the Real Estate Settlement Procedures Act ("RESPA")

A plaintiff who claims a RESPA violation must allege not only a breach of a duty required by RESPA, but also that the breach caused him to suffer actual damages. See 12 U.S.C. § 2605(f)(1)(A); Wilson, 48 F. Supp. 3d at 799. A potentially relevant duty under RESPA to the instant matter is that the servicer shall "[p]romptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete[,]" and, within five days, acknowledge receipt of the application and indicate whether the application is complete. 12 C.F.R. § 1024.41. Construed in the light most favorable to Plaintiffs, the Second Amended Complaint indicates that, at some point during or after 2010, when Plaintiffs experienced financial difficulty, they contacted Defendants for a loan modification. Second Amended Compl., at ¶ M. Following Plaintiffs' initiation of discussion regarding a loan modification, "[o]n various occasions, Defendants indicated that it would extend a loan modification, as long as Mr. and Mrs. Prince submitted formal loan modification application and supporting documents." Id. at ¶ N. It appears that Plaintiffs submitted an application, and "Defendants repeatedly requested documents and forms in addition to these applications." Id. at ¶ O. Plaintiffs contend that it was "almost six years after the process started" when they finally receive a loan modification from Defendants. Id. at ¶ Q. Although Plaintiffs contend that "[t]he lack of action on the Plaintiffs' application, including the lack of a denial" was a violation of RESPA, id., Count VI at ¶ 35, Plaintiffs entered into a loan modification agreement in 2015, indicating that Defendants did respond. Instead, the crux of the claim is whether, upon receipt of an application, Defendants timely reviewed it for completeness, and informed Plaintiffs whether the application was complete. Plaintiffs have not pleaded any detail as to the timing of their submission of an application, Defendants' response regarding the

completeness of the application, or the subsequent back and forth. Because Plaintiffs have had multiple opportunities to adequately plead a claim and have failed to do so, the claim is dismissed with prejudice.

IV.    Conclusion

For the above-stated reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.