<u>**CLOSING**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING**
**COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

November 26, 2019

<u>VIA ECF</u>

<u>**LETTER ORDER**</u>

Re:   **Cary W. Drake v. Wells Fargo Bank, N.A., et al.**
      <u>**Civil Action No. 16-8797**</u>

Dear Litigants:

Before the Court are Defendants Powers Kirn, LLC's ("Powers Kirn"), JDRMDBP-SM, LLC's ("JDR") and Wells Fargo Bank, N.A.'s ("Wells Fargo") Motions to Dismiss, ECF Nos. 33, 35, 37, Plaintiff Cary W. Drake's ("Plaintiff") Third Amended Complaint ("TAC"), ECF No. 21, and Powers Kirn's Motion to Strike, ECF No. 41. For the reasons stated herein, the Motions to Dismiss are granted and the Motion to Strike is denied as moot.

### I.   BACKGROUND

This action arises from a foreclosure on Plaintiff's former home. Plaintiff is the former owner and mortgagor of a residential property in Summit, New Jersey. TAC ¶ 1. At some point in 2009 or 2010, Plaintiff defaulted on his mortgage and on February 4, 2010, Wells Fargo, through its counsel, Powers Kirn, filed a complaint in New Jersey Superior Court to foreclose. Id. ¶ 12. Plaintiff defaulted in the foreclosure action but later moved to have his default set aside, which the Superior Court denied on February 4, 2011. Id. ¶ 18. While the foreclosure litigation was pending, Plaintiff sent two Qualified Written Requests[1] to Wells Fargo, one on May 13, 2013, and a second on June 25, 2013. Id. ¶¶ 21-24. Wells Fargo did not respond to either request. Id. Plaintiff alleges that he then made "some bankruptcy filings" that were "primarily used to stave off the improper foreclosure" on his property. Id. ¶ 24. Plaintiff does not allege the outcome of his bankruptcy proceedings.

---

[1] Under the Real Estate Settlement Procedures Act, a Qualified Written Request is a written communication to a lender that a mortgage account may be in error, and triggers a duty on the recipient to investigate and correct any errors identified in the account. See 12 U.S.C. § 2605(e)(1)(A); Cole v. Wells Fargo Bank, N.A., ___ F. App'x ___ No. 18-2555, 2019 WL 5061396, at *2 (3d Cir. Oct. 9, 2019) (explaining statutory scheme).

On June 19, 2013, the Superior Court entered final judgment in favor of Wells Fargo, finding that it was entitled to recover $573,067, and granting possession of Plaintiff's former home to either Wells Fargo or the purchaser at a sheriff's sale.  Superior Court Final Judgment, Certification of William Powers, Ex. I, ECF No. 33.3. Plaintiff sought and was granted a single stay of a sheriff's sale of the property, but his subsequent requests for stays were denied, and the home was sold at a sheriff's sale to JDR on May 4, 2016.  TAC ¶ 26.

Approximately six months after the sheriff's sale, Plaintiff retained nonparty Mortgage Defense Systems to review the documents in his case.  Id. ¶¶ 27-28.  They determined that "the documents attached to" the complaint in the Superior Court foreclosure action "were to the highest degree of certainty produced through forgeries and fraudulent" methods.  Id. ¶ 28.  Specifically, Plaintiff alleges that the signatures on the mortgage note that Wells Fargo filed in the foreclosure action were created through the use of image manipulation software.  Id. ¶¶ 29-37.

Plaintiff asserts sixteen causes of action arising from this alleged forgery:  (1) violation of the federal and state Racketeer Influenced and Corrupt Organizations ("RICO") statutes, 18 U.S.C. § 1962(c), N.J.S.A. § 2C:41-1 et seq. TAC ¶¶ 38-65; (2) violations of the New Jersey Consumer Fraud Act ("CFA") N.J.S.A. § 56:8-2, TAC ¶¶ 66-77; (3) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., TAC ¶¶ 98-101; (4) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., TAC ¶¶ 102-08; (5) unjust enrichment, TAC ¶¶ 109-14; (6) negligent misrepresentation, id. ¶¶ 114-16; (7) fraudulent concealment, id. ¶¶ 116-18; (8) constructive fraud, id. ¶¶ 119-21; (9) aiding and abetting fraud, id. ¶¶ 122-25; (10) willful and wanton gross negligence, id. ¶¶ 126-29; (11) civil conspiracy to defraud, id. ¶¶ 130-33; (12) conversion, id. ¶¶ 134-38; (13) breach of contract, id. ¶¶ 139-45; (14) defamation, id. ¶¶ 146-55; (15) a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1639b(c), and the Real Estate Settlement Procedures Act ("RESPA"), TAC ¶¶ 156-58; and (16) a quiet title claim under N.J.S.A. § 2A:62-1, TAC ¶¶ 159-66.

On April 18, 2019, Powers Kirn answered the TAC and filed a third-party complaint against Plaintiff's counsel, Joshua L. Thomas ("Thomas").  ECF No. 31.  Powers Kirn, JDR and Wells Fargo moved to dismiss the TAC on April 19, May 7 and May 16, 2019, respectively.  ECF Nos. 33, 35, 37.[2]  On July 3, 2019, Powers Kirn sought an entry of default against Thomas, ECF No. 38, but on June 7, 2019, Thomas answered the third-party complaint.  ECF No. 40.  On June 24, 2019, Powers Kirn moved to strike Thomas's answer to the third-party complaint.  ECF No. 41.

## II.   LEGAL STANDARD

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court must determine whether the movant asserts that the face of the complaint demonstrates a lack of subject matter jurisdiction – a "facial" attack – or whether the

---

[2] Because Powers Kirn answered the complaint, their motion should have been brought pursuant to Federal Rule of Civil Procedure 12(c) rather than Rule 12(b)(6).  The difference here is immaterial, as a Rule 12(b)(6) defense can be raised on a Rule 12(c) motion, and the standards under either rule would be identical.  See Fed. R. Civ. P. 12(h)(2) (permitting Rule 12(b)(1) and Rule 12(b)(6) defenses to be raised on Rule 12(c) motions); Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019) (applying standard under Rule 12(b)(6) to Rule 12(c) motion).

movant disputes the facts as alleged in the complaint – a "factual" attack.  See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014).  A facial attack requires the Court to apply the same standard as it would use under Federal Rule of Civil Procedure 12(b)(6).  Id. at 358.

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III.  ANALYSIS

Defendants argue that this Court lacks subject matter jurisdiction over this action under the Rooker-Feldman doctrine, and further that Plaintiff's claims are either barred by New Jersey's entire controversy doctrine or otherwise fail to state a claim.  The Court agrees with Defendants and dismisses all claims for the following reasons.

### A.  Rooker-Feldman

The Rooker-Feldman doctrine deprives the lower federal courts of subject matter jurisdiction where a plaintiff seeks relief that would require review and rejection of a prior state court judgment.  The rule is based on the statutory grant of appellate jurisdiction over state court decisions to the Supreme Court under 28 U.S.C. § 1257, so "by negative implication, the inferior federal courts lack subject matter jurisdiction to review judgments of those courts."  E.B. v. Verniero, 119 F.3d 1077, 1090 (3d Cir. 1997).  Specifically, the doctrine prevents courts from exercising subject matter jurisdiction over:

> [1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.

Malhan v. Sec'y United States Dep't of State, 938 F.3d 453, 458 (3d Cir. 2019) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  The doctrine prevents a federal court from granting relief where, to do so, it "must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual."  In re Madera, 586 F.3d 228, 232 (3d Cir. 2009) (citation omitted).  The doctrine covers not only federal claims that were actually litigated in the earlier action, but also those that are "inextricably intertwined" with them.  Id.  A claim is "inextricably intertwined" with an earlier state judgment where either (1) the federal court must find that the state court erroneously entered its judgement to grant the requested relief, or (2) where the federal grant of relief would negate the state court judgment.  Id. (citing In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005)).

In the foreclosure context, Rooker-Feldman precludes claims that "would amount to finding that no valid mortgage existed, which would negate the foreclosure judgment." Id.; see also Easley v. New Century Mortg. Corp., 394 F. App'x 946, 948 (3d Cir. 2010) (holding claims for damages to credit rating resulting from reporting of foreclosure barred by Rooker-Feldman).

Defendants argue that the facts as alleged by Plaintiff demonstrate that this Court lacks subject matter jurisdiction under Rooker-Feldman. The parties do not dispute that the first three elements of the doctrine apply here.[3] They only dispute whether Plaintiff's claims invite the review and rejection of the foreclosure judgment. The Court agrees with Defendants that Counts Two, Three, Five through Thirteen, and Sixteen are premised on overturning the foreclosure proceeding, and thus Rooker-Feldman deprives this Court of Jurisdiction.

Specifically, Count Two seeks damages under the CFA for causing plaintiff to make payments on a fraudulent mortgage. TAC ¶ 68. This claim is premised on a finding that the mortgage was invalid and invites the Court to review and reject the foreclosure judgment, thus it is precluded by Rooker-Feldman. See Ogbebor v. J.P. Morgan Chase, N.A., No. 16-3400, 2017 WL 449596, at *11 (D.N.J. Feb. 2, 2017) (finding CFA claim that challenged right to foreclose precluded by Rooker-Feldman). The same is true of the FDCPA violation in Count Three, which asserts that Defendants made false representations regarding his mortgage in the foreclosure proceedings, in violation of the FDCPA. See TAC ¶ 100. See Podeia v. CBSK Fin. Grp., No. 12-03855, 2013 WL 618799, at *2 (D.N.J. Feb. 19, 2013) (finding FDCPA claims that sought "to litigate the validity of the underlying mortgage" barred by Rooker-Feldman). Count Five alleges that Defendants misrepresentations unjustly enriched them through the sheriff's sale of his home, TAC ¶¶ 111-13, and again asks the Court to set aside the prior foreclosure judgment. See Damiani v. Wells Fargo, No. 16-8484, 2018 WL 1731347, at *6 (D.N.J. Apr. 10, 2018) (unjust enrichment claim arising from allegedly invalid mortgage foreclosure barred by Rooker–Feldman doctrine).

Counts Six through Thirteen also seek rejection of the foreclosure judgment and are barred by Rooker-Feldman. These claims seek damages for negligent and fraudulent misrepresentations in the foreclosure action, and again are premised on finding the mortgage invalid. See TAC ¶¶ 115, 117, 120, 123, 127, 131. The Court therefore lacks jurisdiction to hear them.[4] See Pierre v. M&T Bank, No. 16-8639, 2017 WL 1365221, at *2 (D.N.J. Apr. 10, 2017) (fraud and misrepresentation

---

[3] The recent Third Circuit case of Malhan does not alter this result. 938 F.3d at 458. In Malhan, the Court determined that only state court judgments that are practically final would qualify as preclusive under Rooker-Feldman. The Court identified three situations where a judgment is final: (1) where the "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved;" (2) where "'the state action has reached a point where neither party seeks further action.' An example is when a lower state court 'issues a judgment and the losing party allows the time for appeal to expire;'" and (3) when a state proceeding has "finally resolved all the federal questions in the litigation," even though "state law or purely factual questions (whether great or small) remain to be litigated." Id. at 459-60 (quoting Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24-25 (1st Cir. 2005)). Plaintiff here did not appeal the judgment in the foreclosure action and allowed his time to do so to expire, falling squarely within the second situation identified in Malhan. See N.J. Court Rule 2:4-1 (requiring that "appeals from final judgments of courts . . . shall be filed within 45 days of their entry"). The foreclosure judgment is final for Rooker-Feldman purposes.

[4] To the extent that these claims also assert fraud claims subject to Federal Rule of Civil Procedure 9(b), they also lack sufficient particularity to state a claim, and alternatively are dismissed under that rule.

claims that sought to avoid a state foreclosure judgment barred by <u>Rooker-Feldman</u>). <u>Rooker-Feldman</u> also bars the quiet title claim in Count Sixteen. <u>Trapp v. AMS Servicing LLC</u>, 616 F. App'x 46, 47 (3d Cir. 2015) (affirming dismissal of quiet title claim as precluded by <u>Rooker-Feldman</u>).

Plaintiff's remaining claims in Counts One, Four, Fourteen and Fifteen do not necessarily seek review and rejection of the foreclosure judgment, and thus this Court has jurisdiction to hear them. Count One, Plaintiff's RICO claims, include two sets of predicate acts, only one of which is facially precluded by <u>Rooker-Feldman</u>. In one set, Plaintiff alleges various frauds and forgeries related to the validity of the mortgage in the foreclosure action. <u>See</u> TAC ¶¶ 45-59, 63. To find federal or state RICO liability for these claims, the Court must conclude that the state court erred in finding Plaintiff's mortgage valid. The Court has no jurisdiction to hear claims relating to these acts, and thus Plaintiff's New Jersey RICO claim is barred by <u>Rooker-Feldman</u>. In the second set of predicate acts, Plaintiff alleges various fraudulent representations in connection with the bankruptcy proceeding. <u>See</u> TAC ¶¶ 60-62. These acts do not necessarily seek review of the state court judgment, and thus the Court has jurisdiction to hear the federal law RICO claim in Count One.

As pled, the FCRA claim in Count Four is also not barred. Plaintiff alleges that Defendants "reported false and derogatory information to a number of credit reporting agencies regarding Plaintiff's account" in violation of the FCRA, but does not specify what the allegedly false or derogatory information was. TAC ¶ 105. To the extent that this cause of action could be premised on statements unrelated to the validity of the foreclosure judgment, the Court has jurisdiction to hear it. <u>See</u> <u>Bowen v. Bank of America, N.A.</u>, No. 14-3531, 2015 WL 1968974, at *6 (D.N.J. Apr. 30, 2015) (holding FCRA "claim would be barred by <u>Rooker–Feldman</u>" if it sought damages "for reporting related to the mortgage . . . on the theory that the mortgage was invalid," but as claim could be read as asserting "other theories of recovery," it was justiciable). For the same reason, Plaintiff's defamation claim in Count Fourteen can be heard. This claim alleges that "Defendants have published statements . . . to various credit reporting agencies, collection agencies, and/or attorneys that are false and negative representations concerning [Plaintiff's] credit information and history." TAC ¶ 147. As this cause of action could be premised on statements that would not require invalidation of the foreclosure judgment, it is not barred by <u>Rooker-Feldman</u>.

Finally, Count Fifteen is not precluded by <u>Rooker-Feldman</u> because it seeks damages under TILA for Wells Fargo's alleged misrepresentations concerning its compensation, and under RESPA for failing to respond to certain Qualified Written Requests. <u>See</u> TAC ¶ 157-58. Neither of these claims attack the validity of the foreclosure judgment.

**B. The Entire Controversy Doctrine**

Defendants also argue that to the extent Plaintiff's claims are not precluded by <u>Rooker-Feldman</u>, they are barred by New Jersey's Entire Controversy Doctrine. The Court agrees in part.

The Entire Controversy Doctrine "is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." <u>Rycoline Prod., Inc. v. C & W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997). It "is intended to prevent piecemeal litigation by requiring the

assertion of all claims arising from a single controversy in one action," <u>Bank Leumi USA v. Kloss</u>, 331 F. Supp. 3d 404, 408 (D.N.J. 2018), and prevents a party from withholding "part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." <u>In re Mullarkey</u>, 536 F.3d 215, 229 (3d Cir. 2008); <u>Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.</u>, 446 F. App'x 469, 471 (3d Cir. 2011) (same). The doctrine is codified at New Jersey Court Rule 4:30A and precludes a plaintiff from asserting claims not joined in the prior action.[5]

Where the prior action is a foreclosure, the "limits of the entire controversy doctrine" are "somewhat narrower." <u>Coleman</u>, 446 F. App'x at 472. Only those claims that are "germane" to the foreclosure are precluded by the Entire Controversy Doctrine. <u>Id.</u> A claim is germane if it "aris[es] out of the mortgage transaction which is the subject matter of the foreclosure action" <u>Mullarkey</u>, 536 F.3d at 229-30 (quoting <u>Leisure Technology–Northeast v. Klingbeil Holding Co.</u>, 137 N.J. Super. 353, 357 (1975)). "In other words, any claim challenging the foreclosure-plaintiff's 'right to foreclose' is 'germane' to a foreclosure action and must be raised there." <u>Pitts v. Bayview Loan Servicing, LLC</u>, No. 18-633, 2018 WL 6243037, at *5 (D.N.J. Nov. 29, 2018) (citation omitted).

Both of Plaintiff's claims in Count Fifteen are germane to the foreclosure action. Plaintiff's TILA claim alleges that Defendants "willfully omitted and concealed" that Defendants were compensated "by a third-party financier" for the origination of the loan. TAC ¶ 157. This claim arises out of Plaintiff's mortgage and is therefore precluded by the Entire Controversy Doctrine. <u>See</u> <u>Lawrence v. Emigrant Mortg. Co.</u>, No. 11-3569, 2012 WL 1108532, at *15 (D.N.J. Mar. 30, 2012) (TILA claims relating to disclosures at origination are germane to the foreclosure action and barred by Entire Controversy Doctrine in subsequent suit).[6]

Plaintiff's RESPA claim is also germane to the foreclosure. This claim arises from Wells Fargo's failure to respond to two Qualified Written Requests from 2013, more than two years after the foreclosure proceedings started, but before the entry of final judgment. TAC ¶¶ 22-23, 158. Although these claims arose after the initiation of the foreclosure action, RESPA claims that arise during the pendency of foreclosure proceedings are still barred by the doctrine if they were not

---

[5] The doctrine is applicable in federal actions. <u>Coleman</u>, 446 F. App'x at 471.

[6] The Court also finds that Plaintiff's TILA claim fails because it does not apply retroactively. Although no court within the Third Circuit appears to have addressed whether 15 U.S.C. § 1639b(c) applies to mortgages originated before the provision was enacted as part of the Dodd-Frank Act in 2010, there is nothing in either that section or the larger Act to suggest that it does. Whether a statute applies retroactively is determined by the test from <u>Landgraf v. USI Film Products</u>, 511 U.S. 244, 280 (1994). <u>See also</u> <u>United States ex rel. Sefen v. Animas Corp.</u>, 607 F. App'x 165, 168 (3d Cir. 2015) (affirming application of <u>Landgraf</u> to dismissal of False Claims Act action because new statute of limitations in Dodd-Frank did not apply retroactively). Under <u>Landgraf</u>, where Congress fails to specify whether a statute applies retroactively, and the application in question would increase the defendant's liability for past conduct, the application is impermissibly retroactive. <u>Landgraf</u>, 511 U.S. at 280. Here, Congress has not expressly stated whether § 1639b(c) should apply retroactively, and because Plaintiff seeks to apply § 1639b(c), enacted in 2010, to conduct that took place in 2006, he seeks an impermissibly retroactive application.

raised in that proceeding.  Puche v. Wells Fargo NA, 256 F. Supp. 3d 540, 550 (D.N.J. 2017); Cf. Ogbebor, 2017 WL 449596, at *13 (RESPA claims that arose after the entry of final judgment in a foreclosure proceeding not barred by Entire Controversy Doctrine).[7]  As Plaintiff's claims arose before final judgment, they are barred by the Entire Controversy Doctrine.[8]

However, as construed by the Court, Plaintiff's RICO claim in Count One is not precluded by the Entire Controversy Doctrine.  To the extent that Plaintiff's RICO claim is based on false statements made to the bankruptcy court, it does not assert a claim that arises out of the mortgage transaction.  The same is true of Plaintiff's FCRA claim in Count Four and defamation claim in Count Fourteen:  each arises from allegedly false reporting in connection with Plaintiff's debts, not necessarily from Plaintiff's mortgage.  As noted above, Plaintiff does not explicitly premise either of these claims on the validity of his mortgage, and thus they are not facially barred by the entire controversy doctrine.[9]

### C.  Failure to State a Claim

While Counts One, Four and Fourteen are not barred by either Rooker-Feldman or the Entire Controversy Doctrine, the Court agrees with Defendants that these counts fail to state a claim on which relief may be granted.

Count One fails because Plaintiff fails to plead his predicate RICO acts with any particularity.[10]  As noted above, only those predicate acts related to the bankruptcy proceeding are not barred by the Rooker-Feldman doctrine.  Where RICO "predicate acts alleged . . . are acts of fraud, [a plaintiff is] required to plead those allegations with particularity pursuant to Fed. R. Civ. P. 9(b)."  Silverstein v. Percudani, 207 F. App'x 238, 239-40 (3d Cir. 2006).  A plaintiff "may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  Here, Plaintiff does not inject any

---

[7] That Plaintiff defaulted in the foreclosure action is of no moment here:  state court foreclosure judgments obtained by default are valid and binding for purposes of the Entire Controversy Doctrine.  Mason v. US Bank, No. 16-1366, 2016 WL 7189828, at *5 (D.N.J. Dec. 12, 2016).

[8] Plaintiff's RESPA claims are also time-barred.  Plaintiff asserts that Defendants are liable for failing "to either reply with complete responses, fail[ing] to reply at all, or replied with false responses" to his qualified written requests.  TAC ¶ 158.  Claims for failing to respond to a qualified written request under RESPA arise under 12 U.S.C. § 2605(e)(1)(A) (imposing duty to respond within at most 45 days) and § 2605(f) (authorizing cause of action).  Actions may only be brought "within 3 years in the case of a violation of section 2605" from "the date of the occurrence of the violation."  12 U.S.C. § 2614.  Plaintiff alleges that he sent two qualified written requests in June 2013, thus any cause of action for failing to respond to either request would have accrued in 2013, and the statute of limitations would have expired in 2016.  His allegations that he received false responses are unsupported by factual allegations and are conclusory.

[9] Had Plaintiff premised these claims on the validity of his mortgage, they would be precluded by the Entire Controversy Doctrine.  See Pashko v. Bank of Am. N.A., No. 14-3649, 2015 WL 778715, at *3 (D.N.J. Feb. 23, 2015) (FCRA claim premised on validity of mortgage barred by entire controversy doctrine); Patrick v. Am.'s Servicing Co., No. 14-6563, 2015 WL 1759567, at *3 (D.N.J. Apr. 17, 2015) (RICO claims premised on mortgage broker receiving kickbacks barred by entire controversy doctrine).

[10] Federal Rule of Civil Procedure 9(b) applies to both Plaintiff's federal and state law RICO claims.

precision or substantiation into the allegedly fraudulent statements made in the bankruptcy proceeding, and therefore fails to state a RICO claim.

Count One also fails because Plaintiff fails to allege the presence of a RICO enterprise. To plead a violation of 18 U.S.C. § 1962(c), "a plaintiff in a civil RICO action must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc., 751 F. App'x 293, 297 (3d Cir. 2018) (quoting In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010)), cert. denied, 140 S. Ct. 46 (2019). To allege an association-in-fact as the RICO enterprise, a civil RICO plaintiff "must plead facts plausibly implying the existence of an enterprise with the structural attributes identified in Boyle[v. United States, 556 U.S. 938 (2009)]: a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" In re Ins. Brokerage, 618 F.3d at 369-70 (quoting Boyle, 556 U.S. at 946). Here, Plaintiff alleges that all Defendants: Wells Fargo, their foreclosure counsel Powers Kirn, and JDR, the purchaser of Plaintiff's former home at a sheriff's sale, constitute a RICO enterprise. TAC ¶¶ 39-40. Plaintiff does not allege any facts to suggest that these entities have any shared purpose, relationships or longevity among them. In addition, Plaintiff does not allege an enterprise separate and distinct from the Defendants. See Varughese v. Robert Wood Johnson Med. Sch., No. 16-02828, 2017 WL 4270523, at *13 (D.N.J. Sept. 26, 2017) (dismissing RICO claim for failing to distinguish between the "person" subject to the Act and the enterprise). Plaintiff therefore fails to state a claim under RICO.[11]

In Counts Four and Fourteen, Plaintiff claims that Defendants either defamed him or violated the FCRA by falsely representing his "credit information and history" or by reporting "false and derogatory information to a number of credit reporting agencies" TAC ¶¶ 105, 147. Plaintiff's TAC lists only three occasions the allegedly defamatory statements were published: "each time Plaintiff has reached out to Defendants" and whenever either a credit reporting agency either "reached out to Defendants" or "each time a credit reporting agency has reinvestigated any dispute raised by Plaintiff." TAC ¶ 148. To the extent Plaintiff's state law defamation claim rests on statements made to credit reporting agencies, it is preempted by the FCRA. Bertollini v. Harrison, No. 18-15355, 2019 WL 2296150, at *4 (D.N.J. May 30, 2019). Additionally, under New Jersey law, a defamatory statement must be published to a third party, publication to Plaintiff alone is insufficient. Ingris v. Drexler, No. 14-2404, 2015 WL 1472657, at *5 (D.N.J. Mar. 30, 2015) (granting summary judgment on defamation claim where plaintiff did "not allege[] the 'publication' of any statement to any third party. Plaintiff mainly alleges that [defendant] made remarks about Plaintiff to Plaintiff-not to anyone else."). Plaintiff's defamation claim therefore fails.

Plaintiff's FCRA claim also fails: while he alleges that "Defendants violated [15 U.S.C.] §§ 1681n and 1681o of the FCRA," TAC ¶ 106, these provisions "cannot be used by a private

---

[11] Plaintiff has failed to plead the existence of an enterprise under New Jersey's RICO act too, as that statute uses substantially similar language to the federal act and has been interpreted to require many of the same features, including an organization, separation of functions, and a degree of planning and cooperation. State v. Ball, 141 N.J. 142, 162 (1995). Plaintiff does not allege that the "enterprise" here has any such characteristics.

individual to assert a claim." <u>SimmsParris v. Countrywide Fin. Corp.</u>, 652 F.3d 355, 358 (3d Cir. 2011). Instead, § 1681s-2(b) is "the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." <u>Id.</u> But even construing the TAC as asserting a claim under that section, it still fails. Under § 1681s-2(b), furnishers (rather than consumer reporting agencies) can only be liable after the consumer has notified a consumer reporting agency of a dispute. <u>Id.</u>; <u>Burrell v. DFS Servs., LLC</u>, 753 F. Supp. 2d 438, 448 (D.N.J. 2010) (consumers must first dispute statements with credit reporting agency before claim against furnisher accrues). As Plaintiff does not allege that he ever notified any consumer reporting agency of a dispute, Count Four is dismissed.

### D. Motion to Strike

Powers Kirn also moves to strike third party defendant Thomas's answer to their third-party complaint. In light of the Court's determination that none of Plaintiff's claims survive, the Court denies the motion to strike as moot.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motions to Dismiss, ECF Nos. 33, 35 and 37 are **GRANTED,** Powers Kirn's Motion to Strike, ECF No. 41 is **DENIED AS MOOT** and this action is **DISMISSED** as to all counts, and Count One is dismissed without prejudice.

<u>/s Madeline Cox Arleo</u>
**Hon. Madeline Cox Arleo**
**United States District Judge**
